# THE TRUSTEES OF THE EXEMPT FIREMEN'S BENEVOLENT FUND OF THE CITY OF NEW YORK, PLAINTIFFS, *v.* A. P. M. ROOME, DEFENDANT.

*Constitution — validity of a law requiring foreign companies or individuals to pay a tax on premiums to the treasurer of an exempt firemen's association.*

Chapter 89 of 1879, providing that there shall be paid to the treasurer of the trustees of the Exempt Firemen's Benevolent Fund of the city of New York "the per centage or tax on the receipts of the foreign fire insurance companies doing business in the city of New York, as provided by chapter 548 of 1857," is constitutional and valid.

CONTROVERSY submitted upon an agreed statement of facts under section 1279 of the Code of Civil Procedure.

*James C. Carter* and *J. S. Woodward,* for the plaintiffs.

*Joseph H. Choate,* for the defendant.

BRADY, J.:

From an early period in the history of this city and, indeed, until the establishment of the Metropolitan Fire Department, in 1865, by the legislature, the extinguishment of fires occurring here was done by volunteers, who were organized into companies and known as the firemen of the city of New York. The act of March 19, 1787, limited their number to 300, to be nominated and appointed by the mayor and common council; and they were, by its provisions, enjoined to be ready at all times, as well by night as by day, to manage, control and use the fire engines to be provided, and were exempted from service as constables, jurors and militiamen, and placed generally under the regulation of the city government. (1 Greenleaf's Laws [ed. 1792], 412–414, chap. 58.)

In 1792 (chap. 9; see 2 Greenleaf's Laws, 382) the number was increased to 450. In March, 1798, however, upon a petition of the firemen praying to be incorporated, the more effectually to enable them to provide adequate funds for the relief of disabled and injured firemen, and for the purpose of extinguishing fires, they were incorporated by the name of The Fire Department of the City of New York. The corporation thus created was authorized to receive cer-

tain fines, penalties, certificates' and donations arising from viola-
tions of the corporation ordinances relative to fires, and the fund
thus created was directed to be applied towards the relief of indi-
gent or disabled firemen, or their families, and was no doubt
designed as a recognition of an equitable claim, grounded on the
faithful discharge of a highly meritorious public service, and at the
same time as an inducement to secure the co-operation of reliable
citizens. Subsequent acts of the legislature continued The Fire
Department of the City of New York until March, 1865 (see
*People* v. *Pinckney*, 32 N. Y., 388), when an act was passed to
create a metropolitan fire district and to establish a fire department
therein. (See Laws of that year, chap. 249.) In 1849, however
(see Laws of that year, chap. 178), the legislature gave to the fire
department then existing, which was the predecessor of the plain-
tiffs, certain license fees exacted from insurance agents, and which
became a part of the benevolent fund which was commenced in
1798, and was designed, as we have seen, for the benefit of disabled
or indigent firemen and their families. The firemen of New York
continued until the organization of the metropolitan fire district,
under the act of 1865, to be mere volunteers, receiving no compen-
sation for their services, except such as came from certain privileges
in the way of exemption from the performance of other public
duties and a right, in case of necessity, to a participation in the
advantage of the fund mentioned.

It has already appeared that the first legislation by which pay-
ments by the insurance agents were directed to be made to the
treasurer of the plaintiffs' predecessor for the benefit of the fund
mentioned was the act of 1849, and the first legislation requiring
such payments to be made to the present plaintiffs was the act of
incorporation passed April 17, 1866, and the act under which they
are now claimed is that of March 17, 1879. By the act of 1865 it
was provided that the members of the old volunteer fire department,
if discharged by the new commissioners named in the act, were to
be entitled to all the privileges and exemptions allowed by the laws
as if they had served out the full term, and it was declared that
nothing therein contained should be construed to deprive any such
persons of their right to, or affect their interest in, the fund known
as the New York Fire Department Fund, or any part thereof, and

that the fund should continue to be held and administered by the then present trustees of the fire department, or their successors. By a supplementary act, passed on May 12, 1865 (see Laws of that year, chap. 717), a board of trustees was created to take charge of the fire department fund, and the income was required to be appropriated by the trustees to the relief of the widows and orphans of deceased firemen and other applicants for relief from among exempt firemen and their families who should have served in the volunteer department of the city, or should have received proper certificates of discharge from such service in the city from the metropolitan fire commissioners; and it was provided by the ninth section that the trustees were entitled to receive, and that there should be paid to them, all duties, taxes, allowances, penalties and fees to which the fire department of the city of New York, as theretofore established, had been entitled. This seems to have been a temporary act, for in April, 1866 (see Laws of that year, chap. 633), an act was passed creating the plaintiffs a corporation under their present title to exist for twenty years. By the first section it was declared that the president, two vice presidents of the Exempt Firemen's Association of the city of New York, and the then present board of trustees of the fire department fund of the city of New York, were thereby constituted and appointed a body corporate and politic by the name and style of the trustees of the Exempt Firemen's Benevolent Fund of the city of New York. And by the third section of that act it was declared that the existing fire department fund was transferred to the corporation thus created, and the surplus revenue derived from investments and from other sources, or so much thereof as should be required, should be appropriated by the trustees to afford aid and relief to such persons and their families as should have been lawfully discharged from the volunteer fire department of the city of New York who were in indigent circumstances, and to the families of members of that department who had been maimed or killed in the discharge of their duties as volunteer firemen. And by the seventh section it was declared that this corporation was entitled to receive, and that there should be paid, a per centage or tax on the receipts of foreign fire insurance companies doing business in the city of New York for five years from the passage of the act. It thus appears that from the year 1798 down to and including

the year 1866 the benevolent fund for the benefit of the members of the volunteer fire department of the city of New York, and their families, was continued by appropriate legislation, and indeed by the act of March 27, 1877, the right of the plaintiffs to receive the tax was extended for nine years from April, 1877, although it required one-half to be paid over to the New York Fire Department Relief Fund; but by chapter 89 of the Laws of 1879 the seventh section of the act of 1866 was finally amended so as to extend the period of the right of the plaintiffs for nine years from the 17th of April, 1879, and the amendment of 1877, by which one-half was to be paid to the New York Fire Department Relief Fund, was by it dropped, so that it may be said that up to and including the year 1879 the benevolent fund mentioned has been recognized by legislation, and provision made for its continuance by the payment to its treasurer of the tax or license fee to which reference has already been made.

In 1854, and while the act of 1849 without amendment was still in force, a contest arose as to the constitutionality of this act, which imposed the payment of a certain per centage by every person who should act as an agent for individuals or associations of individuals not incorporated or authorized by the laws of this State to effect insurance against losses by fire or against marine losses and risks, and the question mooted was twice argued in the Court of Common Pleas of this city, and all the objections against the legislation which could be drawn either from the Federal or the State Constitution of 1846 were ably argued; but they were overruled decisively and the judgment of the Common Pleas affirmed by that of the Court of Appeals (see *Fire Department* v. *Noble,* 3 E. D. Smith, 440; *Fire Department* v. *Wright,* same volume, 453), and the various acts of the legislature, subsequent to 1840 to which reference has been made, have recognized and reasserted the constitutionality of that act.

It is urged on behalf of the defendant that the validity of the act of 1879 must depend upon the Constitution as it stands amended by the amendments adopted in 1874, which went into effect on the 1st of January, 1875, and he relies chiefly upon article 8, section 10, and upon article 3, sections 18, 20 and 21, and which are as follows :

Article VIII, sec. 10 : " Neither the credit nor the money of the

State shall be given or loaned to or in aid of any association, corporation or private undertaking. This section shall not, however, prevent the legislature from making such provision for the education and support of the blind, the deaf and dumb and juvenile delinquents as to it may seem proper. Nor shall it apply *to any fund* or property now held or which may hereafter be held by the State for *educational* purposes."

Article III, sec. 18 : " The legislature shall not pass a private or local bill in any of the following cases :

" Granting to any private corporation, association or individual any exclusive privilege, immunity or franchise whatever."

Sec. 20. " Every law which imposes, continues or *revives a tax* shall distinctly state the tax and the object to which it is to be applied. And it shall not be sufficient to refer to any other law to fix such tax or object."

Sec. 21. " On the final passage in either house of the legislature of any act which imposes, continues or revives a tax, or creates a debt or charge, or makes, continues or revives any appropriation of public or trust money or property, or releases, discharges or commutes any claim or demand of the State, the question shall be taken by yeas and nays, which shall be duly entered upon the journals, and three-fifths of all the members elected to either house shall in all such cases be necessary to constitute a quorum therein."

In the consideration of the question as to the liability of the defendant herein to pay the per centage provided for, it must be borne in mind that by title 21 of part 1 of chapter 20 of the Revised Statutes (1 R. S., 714), it was provided that no person, association or company of persons residing in any foreign country, and no incorporation established in a foreign country, nor any person in behalf of them or any of them shall directly or indirectly make any contract of insurance, or by way of insurance, against loss or injury by fire, upon any house, building or goods situate or being in this State; that by the second section a forfeit of $1,000 was provided for the use of the poor of the county where such illegal contracts should be made, against whoever should violate the provision referred to. And further that by section 3 it was directed that there should be paid into the *treasury of the State*, on the first day of February in each year, by every person who should act as agent for any indi-

viduals or associations of individuals not incorporated and author-ized by the laws of this State to effect insurances against losses by fire, although such individual or association might be incorporated for that purpose by any other State, the sum of ten dollars upon the one hundred dollars, etc. These provisions were, of course, general in character. And further, that on the 21st of February, 1837 (see Laws of that year, chap. 30) an act was passed amending the Revised Statutes just referred to, and section 3 was so amended as to read that the sum to be paid should be two dollars upon the one hundred dollars. The act of 1849, to which reference has frequently been made, changed these provisions, for it was directed that there should be paid to *the treasurer of the fire department of the city of New York,* for the use and benefit of the department, the sum of two dollars upon the one hundred dollars, and at that rate upon the amount of premiums which during the year or part of a year, ending on the next preceding first day of December, should have been received by such agents; and it was provided also that sections one, two and three of the act should apply to every city or incorporated village in the State, where a treasurer of the fire department existed, and where no such officer is known by the laws of such city or village, the treasurer of such city or incorporated village should exercise all the powers and per-form all the duties, for the purposes of the act, of the treasurer of the fire department of the city of New York, as far as related to the city or village of which he was treasurer, and that he should, under the direction of the common council of the city or the trustees of the village, pay over all the moneys received or recovered under the first, second and third sections of the act, to the fire department of such city or incorporated village. And by sec-tion six of the act all the provisions of the third, fourth, fifth, sixth and seventh sections, and of them only, of title twenty-one, chapter twenty, first part, Revised Statutes, as amended by the act of February 21, 1837, so far as they related to fire insurance were repealed. By this act, although the license fee or tax upon the agents of insurance companies was continued, the mode of pay-ment and disposition of the fund which would be created by its receipt was changed. It was, as we have seen, thereafter to be paid not to the treasurer of the State, but to the treasurer of the fire

department of the city of New York, and to the treasurers of the other fire departments throughout the State, or to some one on their behalf; so that the act of 1849 was a general and not a local or private act extending as it did throughout the State.

The tax or license fee, therefore, provided by the act of 1849, springs out of a general and not a local statute and was passed by three-fifths of the members of the legislature uniting for the purpose, and, as we have seen, was declared to be constitutional. The imposition of the license fee or tax accomplished by this act continues, this general statute never having been repealed, and the payment of it to the representatives of the old volunteer fire department has been continued by the statutes to which reference has been particularly made. This statement seems to be an answer to the proposition that any of the provisions of the Constitution to which reference has been made are applicable. The act of 1879, continuing the appropriation of the tax or license fee provided for by the act of 1849, was neither a credit of the State loaned nor its money given to or in aid of any association, corporation or private undertaking, within the meaning of section 10 of article 18. The two per cent provided for is given by the act of 1849, to indigent and disabled firemen and their families, and for no other purpose, and therefore not bestowed upon any association, corporation or private undertaking.

It may be further said that the declaration contained in that section that it shall not apply to any fund or property now held or which may hereafter be held by the State for educational purposes, embraces the fund in question, and which, by its appropriation to disabled and indigent firemen and their families, may well be used for educational purposes amongst others.

The act of 1879, which only related to the general act of 1849, which provided that two per cent should be paid to the treasurer of the fire department fund created no new tax or burden, and was not therefore a private or local bill, and this seems to be an answer to the proposition resting upon article 3, section 18, by which the legislature are prohibited from passing a private or local bill granting to any private corporation, association or individual any exclusive privilege, immunity or franchise whatever. And inasmuch as the tax or license fee was created by the law of 1849, under which it

is still collected, and the act of 1879 was only a continuation of a right granted by the former law, as to its receipt by certain persons, the twentieth section of article 3 has no application, because the acts authorizing the plaintiffs to sue for the license fee or tax imposed do not, in themselves, continue or revive a tax which was created by the law of 1849, but only continues the diversion as to the person to whom the license fee or tax is to be paid, namely, from the treasurer of the State to the treasurer of the fire department fund.  The same answer may be made to the attempted application of section 21 of article 3, so far as it affects the question under review.  The Laws of 1880 (chap. 542), as amended by the act of 1881 (chap. 361), is not a repeal of the act of 1849.  The only exemption from taxation created by it is the taxation upon capital stock and personal property.  The obligation, as suggested by the counsel for the plaintiffs to make the payment in question, is not imposed upon the corporate bodies for which the defendant acts, but upon himself personally as an agent, who is certainly not exempted.

The consideration of this case, which is not free from difficulty, has led to the conclusions herein stated.  It must be admitted that potent arguments vigorously employed have been presented in favor of the defendant by his learned counsel ; so forcible indeed that the conclusions stated have been adopted with some hesitation, and with the conviction that their correctness is not free from doubt.  From the general character of the statute, however, by which the obligation to pay for the privilege of insuring in the city of New York by insurance companies not incorporated by the laws of this State is created, its constitutionality and the fact that the plaintiffs, as the representative of what once was an administrative part of the city government, and not a private undertaking, and employed for a meritorious purpose, have been made the recipients of the license fee or tax mentioned as a compensation for services voluntarily rendered, and which is continued for the benefit of those disabled in the service of their families and to none others, it is considered that the amendments to the constitution to which reference has been made were not designed to apply to any such organization or association or class.  The mischiefs which were in contemplation at the time of the adoption of such amendments were accomplished by private legislation for special purposes, in aid of persons and corporations

springing into existence, and at once fostered and cherished by the money of the State, without having any meritorious claims upon its bounty or recognition, and generally by special legislation, whether applied to corporations or individuals, which pledged the credit or gave the money of the State for speculative or objectionable projects, the objects of which were not disclosed either by the title of the act conferring the privilege or granting the immunity, or by any provision in the act itself contained.

The views thus expressed require that judgment should be ordered for the plaintiffs according to the statement of facts for the sum of $1,318.83, being two per cent upon the premiums received by the defendant as per his return, with interest thereon to be computed.

DANIELS, J., concurred.

Present — BRADY, P. J., and DANIELS, J.

Judgment ordered for plaintiffs as directed in opinion.